**NOT FOR PUBLICATION**



FILED

JAMES J. WALDRON, CLERK

**MAR. 13, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ Ronnie Plasner, DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re:**<br><br>**TARRAGON CORPORATION**, *et al.*,<br><br>        Debtors. | Case No.:     09-10555 (DHS)<br><br>Judge:     Donald H. Steckroth, U.S.B.J. |
| **ONE HUDSON PARK CONDOMINIUM ASSOCIATION, INC.,**<br><br>        Plaintiff,<br><br>v.<br><br>**TARRAGON CORPORATION**, *et al.*,<br><br>        Defendants. | Adv. Pro. No.: 10-01618 (DHS) |

**OPINION**

**APPEARANCES:**

Lum, Drasco & Positan, LLC
Paul A. Sandars, III , Esq.
Kevin J. O'Connor, Esq.
103 Eisenhower Parkway
Roseland, New Jersey  07068-1049
***Counsel for Plaintiff,***
***One Hudson Park Condominium Association, Inc.***

Cole, Schotz, Meisel, Forman & Leonard
Gerald H. Gline, Esq.
Peter James Herrigel, Esq.
25 Main Street
Hackensack, New Jersey  07601
***Counsel for Defendants,***
***Tarragon Corporation,***
***Tarragon Edgewater Associates, LLC, and***
***Tarragon Development Corporation***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

For determination is a motion filed by the plaintiff, One Hudson Park Condominium Association, Inc. ("Association" or "Plaintiff"), seeking the following relief: (1) a declaration that the Association holds the right to assign and collect fees for the assignment of the remaining storage bins as Limited Common Elements of One Hudson Park Condominium ("Condominium"); and (2) an order for payment of all outstanding post-petition Association fees to be made by the Sponsor entities, Tarragon Corporation, Tarragon Development Corporation, and Tarragon Edgewater Associates, LLC (collectively, the "Defendants," "Debtors," or "Sponsor") pursuant to Federal Rule of Bankruptcy Procedure 7001 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The Plaintiff alleges, with regard to the storage bins, that as Limited Common Elements of the Condominium, Defendants no longer hold the exclusive right as the Sponsor to the Condominium to assign those bins to individual unit owners and collect the accompanying fees paid. The Defendants counter that they remain the Sponsor of the Condominium and that pursuant to the Master Deed, as Sponsors, they have the exclusive right to assign the bins and collect fees that accompany those assignments.

Secondly, the Plaintiff alleges that the Defendants, as tenants in a commercial unit in the Condominium, owe all Association fees that came due subsequent to the filing of Defendants' petitions. Specifically, the Plaintiff claims that these fees must be paid in full as administrative fees or alternatively as a claim secured by a lien held against the commercial unit previously owned by the Defendants. The Defendants counter that the Association failed to timely file a claim for administrative fees and further, that the unit was sold free and clear of any liens. Additionally, with regard to the fees assessed post-confirmation, the Defendants argue that this Court is not the proper venue to render a determination as it has limited jurisdiction over post-confirmation disputes.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**FACTS AND PROCEDURAL HISTORY**

One Hudson Park is a fifteen-story residential condominium building located in Edgewater, New Jersey. (Cert. of Paul A. Sandars, III, ¶ 2) ("Sandars Cert.") The Defendants developed the building, served as Sponsor, and created the condominium owners' Association that would ultimately manage the operations of the Condominium and maintain its facilities and property. When construction was completed in 2007, the Condominium consisted of 168 residential units, one commercial unit, 258 parking spaces, and 148 storage bins. (*Id.* at ¶¶ 2, 5); (Pl.'s Br. in Reply to Defs.' Br. in Opp'n to Mot. for Decl. J., p. 9) ("Pl.'s Reply") The single

commercial unit was owned and occupied by the Defendants at the time the Plaintiff filed the within motion. (Sandars Cert., ¶ 6)  As of November 15, 2011, the Defendants sold and no longer occupied the commercial unit.  (Pl.'s Reply, p. 6)  With all of the units sold, the Condominium unit owners serve as the members of the Plaintiff Association. (Sandars Cert., ¶ 2)

The Defendants filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code in January and early February of 2009.[1]  Their Second Amended Joint Plan of Reorganization was confirmed effective July 6, 2010.[2]  The Defendants, as tenants and owners of the commercial unit between May of 2010 and August of 2011, were assessed condominium fees in the amount of $64,405.48, including late fees and penalties.  (Sandars Cert., Ex. H, p. 2)  Notably, the majority of the fees were assessed prior to the Defendants' plan confirmation in June 2010.  Correspondence between the parties shows that both were on notice of the fees, at the latest, as of October 12, 2011, (Sandars Cert., Ex. I), and that as of November 15, 2011, $64,755.48 was placed into escrow by Defendants' counsel.  (Sandars Cert., Ex. I, Ex. N, p. 2)

Leading up to the sale of the commercial unit by the Defendants, a dispute arose as to the ownership and assignment of certain "Limited Common Elements" including parking spaces located around the commercial unit and storage bins located on the property that can be assigned to an individual unit for its exclusive use.  Pursuant to the Master Deed, "'Limited Common Elements' shall have the same meaning as 'Limited Common Elements' under [the New Jersey Condominium Act, N.J.S.A. §§ 46:8B-1 *et seq.* ("Act"),] except as may be modified herein." (Sandars Cert., Ex. A., Section 2(J)) ("Master Deed")  Under the Act, "'Limited common elements' means those common elements which are for the use of one or more specified units to the exclusion of others."  N.J. Stat. Ann. § 46:8B-3.  The parties have resolved their dispute over the parking spaces, but still seek determination as to the right to assign the storage bins and collect the accompanying one-time fee.  It is undisputed by the parties that the storage bins are Limited Common Elements as defined under the Master Deed.  (Defs.' Br. in Opp'n to Mot. for Decl. J., p. 8) ("Defs.' Br.")  The relevant provisions of the Master Deed state that,

> Limited Common Elements reserved for the exclusive use of each Unit include the following: any balcony to which there is direct access from the interior of a Unit, Assigned Parking Space, Designated Parking Space, and Designated Storage Bin (as defined in Public Offering Statement, which for a fee paid to Sponsor may be used exclusively by Unit Owner.  The Association may adopt Rules and Regulations to regulate the Unit Owner's use and Maintenance of same.

(Master Deed, Section 2(J))

---

[1] Case No. 09-10555(DHS) (In re Tarragon Corporation); Case No. 09-10552(DHS) (In re Tarragon Development Corporation); Case No. 09-10548(DHS) (In re Tarragon Edgewater Associates, LLC).
[2] Order Confirming Second Amended and Restated Joint Plan of Reorganization [ECF Doc. 1962],  June 18, 2010.

The Public Offering Statement ("POS") states that:

> All Storage Bins located in the Condominium will also be part of the Limited Common Elements of the Condominium. The Sponsor, in exchange for a one time fee assessed to a Unit Owner which will be retained by the Sponsor, may designate one or more storage bins as a Limited Common Element for the exclusive use of a particular unit. Any storage bin designated as a Limited Common Element appurtenant to a Unit will be referenced in the Unit Deed conveying title to the Unit for the Purchaser. Any Storage bin designated as a Limited Common Element for the exclusive use by an owner for a specific Unit may subsequently run with title to that specific Unit or be assigned to such Unit owner as a Limited Common Element for the exclusive use by the Owner of another unit (other than the specific unit to which it was originally designated in the Unit Deed).

(Sanders Cert., Ex. C, Section 2) ("POS")

Prior to the chapter 11 bankruptcy petitions, this litigation was originally filed in the Superior Court of New Jersey, Law Division, Hudson County. (Sandars Cert., ¶ 34) Once removed to this Court, the Association filed an adversary action seeking a determination by the Court with respect to its claims. (*Id.* at ¶ 35) By Order dated June 20, 2011, the adversary action brought by the Plaintiff was dismissed without prejudice to allow the Plaintiff to pursue its claims once again in state court. (*Id.* at ¶ 36; *Id.*, Ex. R) Although there is an action currently pending in state court, the Plaintiff has filed the within motion seeking a declaratory judgment that the Association has the exclusive right to manage and assign the storage bins and that the Defendants are required to pay the Association fees assessed post-petition.

## DISCUSSION

### I.    Declaratory Judgment in Adversary Proceedings

This Court, "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Further, "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* Made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7001(9), declaratory judgments may be entered to "determine the validity, priority, or extent of a lien or other interest in property . . . ." Fed. R. Bankr. P. 7001(2).

### II.    Storage Bins

The Plaintiff alleges that the storage bins, as Limited Common Elements, are the exclusive property of the Condominium and the Association is solely responsible for the management of the storage bins, including the right to assign them to individual unit owners and

to collect the accompanying fee.  The Plaintiff acknowledges that prior to the Defendants' sale of their commercial unit they may have still held those rights as Sponsor, but following that sale, control transferred to the Association.  Relying on *Port Liberte Homeowners Ass'n, Inc. v. Sordoni Construction Co.*, 393 N.J. Super. 492, 503 (App. Div. 2007), the Plaintiff argues that the Defendants' role as "Sponsor" effectively ended as "[t]he unique relationship between a condominium association and a developer, created by statute, allows an association to step into the developer's shoes when control is passed to the association" after a transition has taken place. (Pl.'s Reply, p. 6)  To establish that a transition of control has taken place, the Plaintiff directs the Court to *Poblette v. Towne of Historic Smithville Community Ass'n*, 355 N.J. Super. 55 (App. Div. 2002), arguing that, at the least, a "*de facto* transition" occurred when the Defendants declared bankruptcy, or alternatively, upon the sale of their commercial unit.  (Pl.'s Reply, p. 6) Additionally, the Plaintiff claims statutory support under the Act arguing that once 75% of the units were sold the Defendants were required to turn over voting control and tangible property that were common elements of the Association.  (Pl.'s Reply, p. 7)  Lastly, the Plaintiff argues that prior correspondence with the Defendants evidence that the Defendants effectively relinquished any rights to Condominium property as they expressly stated they had no intention to retain any interest after the sale of the commercial unit was closed.  (Pl.'s Reply, p. 8)  The Defendants counter, relying solely on the POS and Master Deed, that they, as Sponsors, have the exclusive right to designate storage bins to a particular unit and collect the fee, and argue that this right has not terminated.  (Defs.' Br., p. 8)

The Act states that upon sale of 75% of the units, "[u]nit owners other than the developer shall be entitled to elect all of the members of the governing board or other form of administration . . . ." N.J. Stat. Ann. § 46:8B-12.1(a).  Additionally, it provides that within 60 days from the time the unit owners elect a majority of the board members, "the developer shall deliver to the association all property of the unit owners and of the association held or controlled by the developer, including . . . [a]ll tangible personal property that is property of the association, represented by the developer to be part of the common elements or ostensibly part of the common elements, and an inventory of that property." N.J. Stat. Ann. §§ 46:8B-12.1(d), (d)(9).

In *Poblette*, the court faced the issue of whether, absent any evidence of a formal transition, as a matter of law, the duty to maintain common facilities of the development transitioned from the developer to the association by virtue of the developer's bankruptcy. *Poblette*, 355 N.J. Super. at 65.  After a heavy storm, there was flooding in areas of the development and residents in those areas sustained water damage to their homes and property. *Id.* at 60.  The flooding was attributed to a malfunctioning detention basin that formed part of the drainage system. *Id.*  Residents filed claims against the association for breach of duty for failing to maintain the basin. *Id.*  The association filed a third-party claim against the developer, arguing that since it owned the land at the time of the flooding, it was responsible. *Id.*  The court noted that the basin was intended to be a limited community facility and that the association was granted an easement under the Master Deed for the maintenance of community and limited community facilities, including the drainage facilities. *Id.* at 63–66.  The court concluded that, upon the developer's bankruptcy, a "*de facto* transfer" occurred to the association of those rights and obligations under the easement provisions to maintain community and limited community facilities, and the association was held liable for damages arising from its failure to maintain those facilities. *Id.* at 66.

Here, the Court is concerned with whether a transition has occurred, and if it has, what authority, rights, and duties transferred from the Defendants to the Plaintiff. The conditions stated above to establish a transition, both under the Act and *Poblette*, are met in this case. All units, residential and commercial, have been sold and transferred by the Defendants. Under the Act, the Developer no longer has any authority to elect members of the governing board or have any involvement with the Association. Furthermore, since the Defendants sold the last unit, the commercial unit it had occupied, the Defendants hold no interest in the building, its property, or the administration and maintenance of that property.

As to the rights and duties transferred from the Defendants to the Plaintiff, the Court finds *Poblette* instructive. While the circumstances in *Poblette* distinguish it from the case at bar, and the positions of the parties are opposite, the proposition for which it stands and upon which Plaintiff relies is applicable. As in *Poblette*, the Defendants, as developer here filed for bankruptcy. Here, too, the Association was formed and tasked with the governance and maintenance of the property and granted an easement to carry out those duties. The Master Deed provides that the "Association shall be the governing body for all of the Unit Owners, for the maintenance, repair, replacement, administration and operation of the Condominium, as provided in the Act, this Master Deed and By-Laws." (Master Deed, Section 11(A)) Additionally, it provides that easements granted to the Sponsor for access to the common elements are effective only "until after the date the last Unit is conveyed in the normal course" and that the Association holds a "perpetual and exclusive easement for the maintenance of any Common Elements, Limited Common Elements or Reserved Common Elements, or if any present or future improvements on the Property (other than Units), including those which may now or hereafter encroach upon a Unit . . . ." (Master Deed, Sections 10(B)(1), (C)(1)) Based on the foregoing provisions included in the Master Deed, it was clearly the intent that authority over the common elements transition to the Plaintiff. In light of the authority discussed above, the Court finds that a transition should be given effect upon the filing of the Defendants' bankruptcy petitions or alternatively upon the sale of the final unit in the building, and that all rights and duties related to the storage bins as Limited Common Elements, including their assignment and collection of the accompanying fee, have transferred to the Association.

The Court need not address the Plaintiff's argument regarding statements made by the Defendants in the correspondence between counsel as it finds sufficient support for the Plaintiff's claim in both the statutory authority and case precedent cited. Additionally, as a matter of equity, it is unclear to the Court how a party can lack an ownership interest, managerial authority or maintenance responsibility in property, as well as lack any membership interest in the entity which does hold ownership interest, managerial authority and maintenance responsibility in that property, yet still claim it has the exclusive right to the assignment of that property and collect a fee for that assignment. As such, the Court finds that the right to designate the exclusive use of the remaining storage bins, as well as collect the accompanying fee, lies with the Plaintiff.

### III.    Post-Petition Condominium Fees

Next, the Plaintiff alleges that the Defendants, as past tenants in the commercial unit, owe the Association post-petition Association fees.  As an initial matter, the Plaintiff argues, relying on section 523(a)(16) of the Bankruptcy Code, that post-petition condominium fees incurred by the owner of a condominium unit are nondischargeable.  (Pl.'s Br. in Supp. of Mot. for Decl. J., p. 9) ("Pl.'s Br.")   The Defendants counter that section 523(a) applies only to "individual debtors" and therefore does not apply to the Defendants.   (Defs.' Br., p. 4)  The Court agrees with the Defendants' plain reading of the statute, and does not find the fees nondischargeable under section 523(a)(16), but will consider the Plaintiff's alternative arguments.

The total amount claimed by the Plaintiff, $64,405.48, includes fees assessed both pre- and post-confirmation.  As the parties introduce alternative arguments for each, the Court will address pre- and post-confirmation fees separately.

### A.    Fees Assessed Pre-Confirmation

The Plaintiff relies on the Act and Master Deed to support its right to assess fees for common expenses.   Moreover, as a consequence of the Defendants' continued legal and possessory interest in the commercial unit post-petition, Plaintiff contends that the Defendants are liable for all post-petition arrearages for condominium maintenance fees.  (Pl.'s Br., p. 20) The Defendants contend that these fees are administrative expenses and as a result are governed by the Defendants' Second Amended and Restated Joint Plan of Reorganization.  (Defs.' Br., p. 4)   The Defendants argue that because the Plaintiff failed to timely file an application for allowance of an administrative expense related to the fees, the Plaintiff is barred from asserting a claim for the pre-confirmation portion of the fees.  (*Id.*)  The Plaintiff counters that these fees are not administrative, but rather a post-petition secured claim.  (Pl.'s Reply, p. 4) At oral argument, relying on the condominium documents and the Act, the Plaintiff argued that "unpaid fees are a lien against the unit" and that the lien is perfected without any further action.  The Court agrees that if the Plaintiff holds a perfected lien against a unit and that unit was the subject of a sale, the Plaintiff may be entitled to proceeds from a sale free and clear of liens, with liens to attach to the proceeds.  Therefore, as a threshold matter, the Court must determine to what extent the Plaintiff holds a valid enforceable lien.

The Plaintiff's argument that it holds an effective lien against the unit relies on language from both the Master Deed and the Act.  The Master Deed states that:

> The charges and expenses represented in the annual budget and Common Expense Assessment become effective as a lien against each Unit on the first day of each year.   Additional or added assessments, any and all other types of fees, fines, charges and expenses (collectively referred to as "Additional Fees"), if any, chargeable to a Unit or Unit Owner and not covered by the annual Common Expense Assessment become effective as a lien against each Unit as of the date when the Additional Fees are levied or incurred.  All liens may be recorded in accordance with <u>N.J.S.A.</u>

46:8B-21, <u>et</u> <u>seq</u>. and foreclosed by the Association in accordance with the law.

(Master Deed, section (9)(B))

The Master Deed indicates that recordation should be completed pursuant to the Act. Looking to N.J.S.A § 46:8B-21,

> The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner . . . . *Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located* of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. *Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association.*

N.J. Stat. Ann. § 46:8B-21 (emphasis added).

The lien held by the Plaintiff is not effective until it is properly recorded. *See In re Robinson*, 231 B.R. 30, 35 (Bankr. D.N.J. 1997) (holding an "[a]ssociation's lien is valid only as to the amount due at the time it was recorded," and denying claim for fees assessed post-recordation). The Act also provides that "[a]ny agreement contrary to the provisions of this act shall be void." N.J. Stat. Ann. § 46:8B-7. Therefore, any language in the Master Deed that provides for the perfection of a lien without recordation will be seen as invalid and not considered by the Court in its determination. To hold an effective lien, the Plaintiff must comply with the requirements pursuant to the Act. The record is void of any evidence that the Association recorded a lien against the commercial unit while it was owned by the Defendants. Therefore, the Plaintiff has not met the recordation requirements of the Act and thus is not a secured lien holder. Moreover, the Plaintiff could have filed an administrative claim prior to the bar date which also would have entitled it to repayment under the Plan. Lastly, even as an unsecured creditor, it may have been possible for the Plaintiff to vote against confirmation of the Plan. The Plaintiff failed to execute any of these actions and therefore is not entitled to repayment of fees assessed pre-confirmation.

## B.    Fees Assessed Post-Confirmation

As noted above, the Defendants challenge this Court's jurisdiction with regard to post-confirmation disputes. Because this challenge raises a threshold matter, this Court must first determine whether it is the proper forum to resolve post-confirmation claims and disputes. (Defs.' Br., p. 4) The Defendants cite well-known case law for the proposition that the bankruptcy court has limited jurisdiction over disputes between the debtor and its creditors that arise post-confirmation. (*Id.*) Alternatively, the Defendants argue that since this matter was

previously before this Court as an adversary action that was dismissed with the Plaintiff's consent in order to allow it to bring the claim in state court, it should not be allowed to reintroduce it here. (*Id.*) The Plaintiff counters that while the bankruptcy court has limited jurisdiction over post-confirmation claims, it is the appropriate forum to hear disputes relating to the transfer of property dealt with by a confirmed plan, including satisfaction of a lien or any other act that is necessary for the consummation of the plan. (Pl.'s Reply, p. 4) The Plaintiff argues that because the property was subject to a lien it is appropriate that this Court resolve the dispute. (*Id.*) Lastly, the Plaintiff contends that the prior dismissal of the adversary proceeding did not concern post-confirmation fees, but only claims brought by the Plaintiff to recover under various insurance policies. (*Id.* at 5)

The Court finds that the Plaintiff did, in fact, consent to the dismissal of this claim so that it could be brought in state court. As noted above, there is no evidence on the record that the Plaintiff satisfied the statutory requirements to hold a perfected lien against the unit. Thus, any argument the Plaintiff brings predicated on the existence of a lien is without merit. Additionally, the Plaintiff, in its own moving papers, acknowledges that the recovery of post-confirmation fees is part of a currently pending state court action. Therefore, the Court will not determine the claim for post-confirmation fees. That issue is properly before the state court.

## **CONCLUSION**

For the reasons stated, the relief sought by the Plaintiff will be granted in part and denied in part. The Court finds that the Plaintiff holds the right to assign and collect fees for the assignment of the remaining storage bins as Limited Common Elements of One Hudson Park Condominium. Further, the Court finds that the Plaintiff is not entitled to post-petition, pre-confirmation, Association fees from the Defendants. Lastly, the Court finds that this is not the proper forum to resolve the claim for post-petition, post-confirmation, fees alleged to be owed by the Defendants.

An Order in Conformance with this Opinion has been entered by the Court and a copy is enclosed.

/s/   *Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: March 13, 2012